UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JENNIFER LONG,

        Plaintiff,

v.                                     Case No: 6:21-cv-1649-CEM-EJK

RAVAGO AMERICAS, LLC,

        Defendant.

## REPORT AND RECOMMENDATION

This cause comes before the Court on the parties' Joint Renewed Motion for Approval of Fair Labor Standards Act Settlement and Dismissal with Prejudice (the "Motion"), filed June 29, 2022. (Doc. 25.) Upon consideration, I respectfully recommend that the Motion be granted in part.

**I. BACKGROUND**

On October 5, 2021, Plaintiff Jennifer Long initiated this action against Defendant Ravago Americas, LLC, alleging violations of the Fair Labor Standards Act, as amended, 29 U.S.C. § 216(b) ("FLSA"). (Doc. 1.) Therein, Plaintiff alleged that she was employed by Defendant as an accounts payable coordinator from approximately October 7, 2013, to present. (*Id.* ¶¶ 20–19.) Plaintiff further alleged that she typically worked more than 40 hours in a work week, up to 65 hours, and that Defendant failed to pay her for all overtime hours worked. (*Id.* ¶¶ 23–26.) However, Plaintiff and Defendants have negotiated a compromise and settlement of Plaintiff's

claims and filed a motion for approval of their settlement agreement (the "Agreement"), pursuant to *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354–55 (11th Cir. 1982). (*Id.* at 11–22.) On July 5, 2022, the Court directed counsel to inform the Court "whether or not the parties have entered into any agreement . . . . that has not been disclosed to the Court." (Doc. 26.) The parties indicated that they have not. (Doc. 27.) Thus, the Motion is ripe for review.

II. **STANDARD**

"The principal congressional purpose in enacting the Fair Labor Standards Act of 1938 was to protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers.'" *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981) (alteration in original) (quoting 29 U.S.C. § 202(a)). "Any employer who violates the provisions of section 206 or section 207 of [the FLSA] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Section 206 establishes the federally mandated minimum hourly wage, and § 207 prescribes overtime compensation of "one and one-half times the regular rate" for each hour worked in excess of forty hours during a given workweek. The provisions of the FLSA are mandatory and "cannot be abridged by contract or otherwise waived." *Barrentine*, 450 U.S. at 740. To permit otherwise would "'nullify the purposes' of the [FLSA] and thwart the legislative policies it was

designed to effectuate." *Id.* (quoting *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945)).

The parties seek judicial review and a determination that their settlement is a "fair and reasonable resolution of a bona fide dispute" over FLSA issues. *See Lynn's Food Stores*, 679 F.2d at 1354–55. If a settlement is not supervised by the Department of Labor, the only other route for a compromise of FLSA claims is provided in the context of suits brought directly by employees against their employers under § 216(b) to recover back wages for FLSA violations. *Id.* at 1353. "When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Id.*

The Eleventh Circuit has held that "[s]ettlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context." *Id.* at 1354. In adversarial cases:

> The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

*Id.*

When evaluating an FLSA settlement agreement, the district court considers both whether the settlement is fair and reasonable to the employee, or "internal" factors, and whether the settlement frustrates the purpose of the FLSA, or "external" factors. *Dees v. Hyrdradry, Inc.*, 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010); *Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1350–51 (M.D. Fla. 2010). Factors considered "internal" include: "(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the counsel." *Hamilton v. Frito-Lay, Inc.*, No. 6:05-CV-592-ORL-22JGG, 2007 WL 328792, at *2 (M.D. Fla. Jan. 8, 2007). There is a "'strong presumption' in favor of finding a settlement fair." *Id.* (quoting *Cotton v. Hinton*, 559 F.2d 1336, 1331 (5th Cir. 1977)).[1]

## III. DISCUSSION

### A. Settlement Sum

According to the Agreement, Defendant has agreed to pay Plaintiff a total of $8,712.50: $4,356.25 for Plaintiff's wage claims and $4,356.25 in liquidated damages. (Doc. 25-1 ¶ 2.) Plaintiff initially sought damages of $25,165.00 plus liquidated damages and attorney's fees and costs. (Doc. 15 at 2.) Because Plaintiff will receive

---

[1] *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (holding all decisions from the Fifth Circuit handed down prior to October 1, 1981, are binding on the Eleventh Circuit).

less than the amount which she claimed she was entitled to under the FLSA, she has compromised her claim within the meaning of *Lynn's Food,* 679 F.2d at 1354–55.

Under 29 U.S.C. § 216(b), an employee damaged by a violation of the FLSA is entitled to unpaid overtime compensation plus an additional, equal amount, as liquidated damages. Title 29 U.S.C. § 216(b) ("Any employer who violates the provisions of [the FLSA] shall be liable to the employee … affected in the amount of their unpaid minimum wages. . . . in an additional equal amount as liquidated damages."). On review of the issues discussed by the parties in the Motion, I find the $8,712.50 that Plaintiff has agreed to accept in satisfaction of her claims to be fair and reasonable in comparison to Plaintiff's original claim, considering that all parties are represented by counsel and wish to avoid the risk and expense of further litigation. Thus, I recommend a finding that the settlement sum represents a fair resolution of a *bona fide* dispute between the parties and that Plaintiff has not unfairly compromised her claim.

### B. Attorney's Fees

Plaintiff's attorneys will receive $4,537.50 for fees and costs. (Doc. 25-1 ¶ 2.) Pursuant to 29 U.S.C. § 216(b), "[t]he court [in an FLSA action] shall . . . allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." The parties represent that this amount was negotiated separately from the amount received by Plaintiff, and the settlement is otherwise reasonable on its face; therefore, further review is not required. (Doc. 25 at 10); *Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009) (stating that if the parties "represent[] that the plaintiff's

attorneys' fee was agreed upon separately and without regard to the amount paid to the plaintiff, . . . the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel.").

### C. General Release

In return for payment, Plaintiff has agreed to the following general release:

> a. This Agreement shall constitute a waive and release of any and all claims Long has, might have, or believes she has, against Ravago, its affiliated entities, subsidiaries, business united, parent companies, insurers, independent contractors, management companies, joint employers, predecessors, successors and assigns, past, present, and future, and their respective owners, officers, directors, executives, managers, members, managing members, employees, representatives, agents, attorneys, shareholders, trustees, joint venturers, partners, heirs, executors, administrators, servants, predecessors, successors and assigns, past, present and future (referred to collectively as "Released Parties" and singularly as "Released Party") as of the date of the execution of this Agreement, whether such claims arise or could arise under federal, state, administrative, or local law.
>
> b. Long, on behalf of herself and her heirs, executors, administrators, successors, representatives, agents, and assigns, knowingly and voluntarily releases and forever discharges Released Parties from any and all claims that Long, her heirs, executors, administrators, successors, representatives, agents, and assigns have or may have as of the date of the execution of this Agreement, including, but not limited to, any claims arising from or relating to her employment with Ravago, or relationship with any Released Party, any violation of:
>
>> (i) The Fair Labor Standards Act;
>>
>> (ii) The Florida Minimum Wage Act;
>>
>> (iii) The Florida Constitution;
>>
>> (iv) The Family and Medical Leave Act of 1993;
>>
>> (v) The Florida Civil Rights Act of 1992;

> (vi) The Age Discrimination in Employment Act of 1967 ("ADEA")
>
> (vii) Title VII of the Civil Rights Act of 1964;
>
> (viii) The Americas with Disabilities Act

As each of the foregoing has been or may be amended, and any and all claims arising under or relating to any other federal, state, administrative, or local statute, law, rule or regulations, and/or the common law, including, without limitation, claims for retaliation, breach of contract, unpaid wages, intentional and negligent infliction of emotional distress, discrimination, misrepresentation, negligence, defamation, constructive termination, and any and all other claims, including any and all claims for liquidated damages and attorneys' fees and costs. This Paragraph does not apply to any claims that arise exclusively out of facts, situations, events, statements, or other occurrences that commence or take place after the date this Agreement is executed by Long or to any claims that controlling law clearly states cannot be released by private agreement.

      c.     Long shall withdraw and dismiss, with prejudice, the Lawsuit, and any and all pending actions or proceedings that she has or might have commenced against any Released Party. Specifically, Long agrees to take all necessary steps to secure dismissal of all of her claims against Ravago and any Released Party, with prejudice, including filing any required documents and taking all other actions necessary to secure the total and complete dismissal of the Lawsuit with prejudice. Long confirms that other than the Lawsuit, she currently has no claims, complaints, charges, or proceedings pending in any court, administrative agency, commission or other forum relating directly or indirectly to her employment with Ravago or relationship with an Released Party.

      d.     Long agrees to indemnify and hold Released Parties harmless from any loss, cost damage or expense (including attorneys' fees) incurred by any Released Party if any Released Party has to seek to enforce this Agreement or use it as a defense in any proceeding against Long and prevails in doing same.

(Doc. 25-1 ¶ 5) (the "Release").

General releases in FLSA cases are frequently viewed as "a 'side deal' in which the employer extracts a gratuitous (although usually valueless) release of all claims in exchange for money unconditionally owed to the employee" and, therefore, such releases "confer[] an uncompensated, unevaluated, and unfair benefit on the employer." *Moreno*, 729 F. Supp. 2d at 1351–52 (footnote omitted). As such, "[a] compromise of an FLSA claim that contains a pervasive release of unknown claims fails judicial scrutiny." *Id.* at 1352.

Nevertheless, courts in this District have approved general releases where a plaintiff received adequate, additional consideration in exchange, even where plaintiffs comprised their FLSA claims. *Deslandes v. BAM-B Enterprises of Cent. Fla., Inc.*, No. 6:17-cv-1393-Orl-41TBS, 2018 WL 3352937, at *3 (M.D. Fla. June 28, 2018) (approving FLSA settlement where plaintiff compromised the FLSA claim and received $300 in separate consideration), *report and recommendation adopted*, No. 6:17-cv-1393-Orl-41TBS, 2018 WL 3344380 (M.D. Fla. July 9, 2018); *Cooley v. Real Prop. Specialists, Inc.*, No. 6:18-cv-752-Orl-41GJK, 2018 WL 5847423, at *4 (M.D. Fla. Oct. 4, 2018) (approving FLSA settlement where plaintiff compromised the FLSA claim and received $500 in separate consideration for a general release), *report and recommendation adopted*, No. 6:18-cv-752-Orl-41GJK, 2018 WL 5840508 (M.D. Fla. Nov. 8, 2018).

Here, Plaintiff is receiving $500.00 as consideration for the Release. (Doc. 25-1 ¶ 2.) Additionally, the parties have certified to the Court that Plaintiff is not aware of any additional claims against Defendants that she is releasing pursuant to the

Agreement. (Doc. 25 at 6–7.) This leads me to conclude that the separate consideration is adequate. *See Owens v. SSRMI, LLC*, No. 5:16-cv-15-Oc-PGB-PRL, 2017 WL 2190646, at *3 (M.D. Fla. Apr. 28, 2017), *report and recommendation adopted sub nom. Owens v. SSRM1, LLC*, 2017 WL 2172089 (M.D. Fla. May 17, 2017) (explaining that in order for a court to make an informed determination as to whether a general release affects the fairness and reasonableness of a settlement, an explanation regarding any other claims that a plaintiff is knowingly releasing and identification of any additional consideration given in exchange must be discussed). Therefore, I conclude that the Release does not "undermine the public policies embodied in the FLSA and other labor and employment laws." *Wilburn v. Paradise Lawns and Landscaping, Inc. et al*, 6:14-cv-1557-Orl-37TBS, 2015 WL 13793352, at *3 n.1 (M.D. Fla. Feb. 13, 2015) (citing *Dees*, 706 F. Supp. 2d at 1242), *report and recommendation adopted*, No. 6:14-cv-1557-Orl-37TBS, 2015 WL 13793264 (M.D. Fla. Feb. 19, 2015).

### D. Class and Collective Action Waiver

The Agreement also contains a class and collective action waiver, which states that:

> Long acknowledges and agrees that included among the claims released are any and all claims that may be asserted by her or by any other person or entity on her behalf in any class or collective action relating to any Released Party, including Ravago. Consistent with the terms of this Agreement:
>
> (a)   Long waives any right to become, and promises not to consent to become, a member of any collective action or class in a case in which claims are asserted against any Released Party and that involve events which have occurred on or before the date Long signs this Agreement; and

> (b) Long waives any and all rights she might otherwise have to receive any notice of any class or collective action. In the event Long is included or identified as a member, or potential member of a class in any proceeding against any Released Party, Long agrees to opt out of the class or request exclusion from the class at the first opportunity afforded to her after learning of her inclusion. In this regard, Long agrees she will execute, without objection or delay, an "opt-out," withdrawal, or like form in connection with such proceeding.

(Doc. 25-1 ¶ 6) ("Class Action Waiver").

The Agreement states that Plaintiff is receiving $500.00 as consideration for the "general release, non-disparagement, cooperation, and *other promises set forth in this Agreement*." (Doc. 25-1 ¶ 2 (emphasis added).) Thus, it appears that Plaintiff is receiving $500.00 as consideration for the Class Action Waiver, as well as the aforementioned provisions. Therefore, I recommend that the Court find that the Class Action Waiver does not render the Agreement unfair or unreasonable. *See Weldon v. Backwoods Steakhouse, Inc.*, No. 6:14-cv-00079-Orl-37TBS, 2014 WL 4385593, at *1, 4 (M.D. Fla. Sept. 4, 2014) (approving FLSA settlement with a general release because the plaintiffs received independent compensation in exchange for the general release). *Cf. Lowe v. NewQuest, LLC*, No. 8:21-cv-2320-TPB-JSS, 2022 WL 1721195, at *3 (M.D. Fla. May 11, 2022) (striking a class action waiver from an FLSA settlement where the plaintiff received no separate consideration for the provision), *report and recommendation adopted*, No. 8:21-cv-2320-TPB-JSS, 2022 WL 1720833 (M.D. Fla. May 27, 2022).

### E. Non-Disparagement Provision

The Agreement contains a non-disparagement provision. (Doc. 25-1 ¶ 8.) It provides, in relevant part, that "Long agrees she will not make statements that are in any way disparaging or negative to Released Parties, Released Parties' services, or Released Parties' representatives or employees with regard to this lawsuit." (*Id.*) (tehe "Non-Disparagement Provision"). As with the other provisions, judges in this district have approved settlement agreements with non-disparagement provisions when the employee received additional consideration. *See Caamal v. Shelter Mortg. Co., L.L.C.*, No. 6:13-cv-706-Orl-36KRS, 2013 WL 5421955, at *4 (M.D. Fla. Sept.26, 2013) (approving settlement agreement whereby plaintiff received $500.00, a mutual release of claims, and an agreement to provide a neutral reference in exchange for a general release of claims, a non-disparagement agreement and a waiver of future employment).

Here, Plaintiff is receiving $500.00 in separate consideration for the General Release and the Non-Disparagement Provision. (Doc. 25-1 ¶ 2.) As such, I recommend the Court find the Non-Disparagement Provision does not render the Agreement unfair or unreasonable. *See Smith v. Aramark Corp.*, Case No. 6:14-cv-409-Orl-22KRS, 2014 WL 5690488, at *3–4 (M.D. Fla. Nov. 4, 2014) (approving FLSA settlement providing separate consideration for a confidentiality and non-disparagement clause).

### F. Amendments Provision

The Agreement contains a provision that grants the parties leave to amend the Agreement (the "Amendments Provision"). It provides that "[t]his Agreement may

not be modified, altered or changed, except upon written consent by Ravago or Long wherein specific reference is made to this Agreement." (Doc. 25-1 ¶ 17.) However, approval of a settlement agreement with such a provision leaves "the parties free to circumvent *Lynn's Food* review through post hoc modifications of an already-approved agreement." *Dumas v. 1 ABLE REALTY, LLC*, No. 6:17-cv-765-Orl-37KRS, 2018 WL 5020134, at *3 (M.D. Fla. Mar. 9, 2018). As such, I cannot recommend approval of an agreement that is not in its "final form, with [] opportunity for amendment." *Id. Ramnaraine v. Super Transp. of Fla., LLC*, No. 6:15-cv-710-Orl-22GJK, 2016 WL 1376358, at *4 (M.D. Fla. Mar. 28, 2016), *report and recommendation adopted*, No. 6:15-cv-710-Orl-22GJK, 2016 WL 1305353 (M.D. Fla. Apr. 4, 2016) (recommending that the non-disparagement and confidentiality provisions be stricken from a settlement agreement that contained a severability provision).

However, the Agreement contains a severability provision that provides, in relevant part:

> Should any provision of this Agreement be declared illegal or unenforceable by a court of competent jurisdiction and cannot be modified to be enforceable, excluding the general release language, such provision shall immediately become null and void, leaving the remainder of this Agreement in full force and effect.

(Doc. 25-1 ¶ 10) (the "Severability Provision"). Courts in this District routinely approve settlement agreements while striking unfair or unenforceable provisions of the agreement when the agreement contains a severability provision. *See, e.g.*, *Encarnacion v. Dannix Painting LLC*, No. 6:18-cv-682-Orl-41KRS, 2018 WL 5084749, at *3 (M.D.

Fla. Aug. 13, 2018), *report and recommendation adopted*, 2018 WL 5840509 (M.D. Fla. Nov. 8, 2018) (recommending that the contradictory provisions and the general release provision be stricken where the settlement agreement contained a severability provision). Because the Severability Provision permits striking the Amendments Provision, I recommend that the Court sever the Amendments Provision (Doc. 25-1 ¶ 17) from the Agreement.

### IV.  RECOMMENDATION

Upon consideration of the foregoing, I respectfully recommend that the Court:

1. **GRANT IN PART** the parties' Joint Renewed Motion for Approval of Fair Labor Standards Act Settlement and Dismissal with Prejudice (Doc. 25);

2. **SEVER** the Amendments Provision (Doc. 25-1 ¶ 17);

3. **FIND** that the parties' Agreement (Doc. 25-1), as revised, is a fair and reasonable resolution of a *bona fide* dispute under the FLSA;

4. **DISMISS** the case with prejudice; and

5. **DIRECT** the Clerk of Court to close the file.

## NOTICE TO PARTIES

The party has fourteen days from the date the party is served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. § 636(b)(1)(C). A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1). If the parties do not object to this Report and Recommendation, then they may expedite the approval process by filing notices of non-objection.

Recommended in Orlando, Florida on July 12, 2022.

_____
EMBRY J. KIDD
UNITED STATES MAGISTRATE JUDGE